UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| MELISSA D. B., | ) | |
|---|---|---|
| Plaintiff | ) | |
| v. | ) | No. 2:19-cv-00058-JAW |
| ANDREW M. SAUL,<br>Commissioner of Social Security,[1] | ) | |
| Defendant | ) | |

## REPORT AND RECOMMENDED DECISION[2]

The plaintiff in this Supplemental Security Income ("SSI") appeal contends that the Appeals Council erred in initially deeming her appeal of an administrative law judge's ("ALJ's") decision untimely and then denying her request for review, and that the ALJ erred in concluding that (i) her spine and hip issues, bipolar disorder, and post-traumatic stress disorder ("PTSD") were not medically determinable impairments, (ii) her carpal tunnel syndrome ("CTS") was nonsevere, (iii) none of her impairments met or equaled any of the so-called "Listings," Appendix 1 to 20 C.F.R. Part 404, Subpart P, and (iv) she retained the residual functional capacity ("RFC") to stand and/or walk about for about three hours in an eight-hour workday. *See* Plaintiff's Itemized Statement of Errors ("Statement of Errors") (ECF No. 11) at 5-20. I find no reversible error and, accordingly, recommend that the court affirm the commissioner's decision.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.
[2] This action is properly brought under 42 U.S.C. § 1383(c)(3). The commissioner has admitted that the plaintiff has exhausted her administrative remedies. The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which she seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement. Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

1

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. § 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff had the severe physical impairment of left foot dysfunction (status-post reconstructive surgery) and the severe mental impairments of a severe mood disorder not otherwise specified ("NOS") and a history of substance addiction disorder (in remission), Finding 2, Record at 54; that she did not have an impairment or combination of impairments that met or medically equaled the criteria of any of the Listings, Finding 3, *id*. at 56; that she had the RFC to perform light work as defined in 20 C.F.R. § 416.967(b), except that she could stand and/or walk for about three hours in an eight-hour workday, could not work using foot controls, could occasionally climb ramps and stairs but never ladders, ropes, or scaffolds, could occasionally balance, kneel, crouch, and crawl, could not work at unprotected heights with dangerous, moving machinery or on sloped or irregular surfaces, was able to understand, remember, and perform simple, routine instructions and tasks, could not work with the general public, and was able to adapt to simple changes in the work routine, and might need a cane to ambulate, Finding 4, *id*. at 57; that, considering her age (27 years old, defined as a younger individual, on the date her SSI application was filed, July 30, 2015), education (limited, but able to communicate in English), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that she could perform, Findings 6-9, *id*. at 61; and that she, therefore, had not been disabled from July 30, 2015, the date her SSI application was filed, through the date of the decision, October 2, 2017, Finding 10, *id*. at 62-63. The Appeals Council declined to review the decision, *id*. at 16, 18, making the decision the final determination of the commissioner, 20 C.F.R. § 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence. 42 U.S.C. § 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996). In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn. *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than her past relevant work. 20 C.F.R. § 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7. The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work. *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

Although the plaintiff does not discuss the remaining steps in order, her statement of errors also appears to implicate Steps 2, 3, and 4 of the sequential evaluation process.

At Step 2, a claimant bears the burden of proof, although it is a *de minimis* burden, designed to do no more than screen out groundless claims. *McDonald v. Sec'y of Health & Human Servs.*, 795 F.2d 1118, 1124 (1st Cir. 1986). When a claimant produces evidence of an impairment, the commissioner may make a determination of non-disability at Step 2 only when the medical evidence "establishes only a slight abnormality or [a] combination of slight abnormalities which would have no more than a minimal effect on an individual's ability to work even if the individual's age, education, or work experience were specifically considered." *Id.* (quoting Social Security Ruling 85-28).

At Step 3 of the sequential evaluation process, a claimant bears the burden of proving that her impairment or combination of impairments meets or equals a listing. 20 C.F.R. § 416.920(d); *Dudley v. Sec'y of Health & Human Servs.*, 816 F.2d 792, 793 (1st Cir. 1987). To meet a listing, the claimant's impairment(s) must satisfy all criteria of that listing, including required objective medical findings. 20 C.F.R. § 416.925(c)(3). To equal a listing, the claimant's impairment(s) must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. § 416.926(a).

At Step 4 of the sequential evaluation process, a claimant bears the burden of proving inability to return to past relevant work. 20 C.F.R. § 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work. 20 C.F.R. § 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

## I. Discussion

### A. Asserted Errors by Appeals Council

The plaintiff first asserts that the Appeals Council erred in denying her December 5, 2017, appeal of the ALJ's October 2, 2017, decision as untimely. *See* Statement of Errors at 5-7; Letter dated January 5, 2018, from Office of Disability Adjudication and Review ("ODAR") to Plaintiff ("January 5, 2018, Letter"), Plaintiff's Exh. 3 (ECF No. 11-3) to Statement of Errors, at Page ID # 713. For this asserted error, she seeks an award of benefits or a remand with instructions. *See* Statement of Errors at 7. As the commissioner correctly points out, *see* Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 14) at 4-5, remand is not warranted on this basis unless resulting prejudice is shown, *see*, e.*g.*, *Lewis v. Astrue*, No. 06-121-B-W, 2007

4

WL 2021912, at *5 (D. Me. July 11, 2007) (rec. dec., *aff'd* Aug. 15, 2007). The plaintiff identifies no prejudice, *see* Statement of Errors at 5-7, nor can she. The Appeals Council ultimately considered her request for a review of the ALJ's decision, denying that request by decision dated June 25, 2018. *See* Notice of Appeals Council Action ("June 25, 2018, Notice"), Plaintiff's Exh. 9 (ECF No. 11-9) to Statement of Errors, at Page ID # 752. Nor does the plaintiff cite any authority supportive of an award of benefits in the case of such an error. *See* Statement of Errors at 5-7.

Next, the plaintiff contends that the Appeals Council improperly denied her request for review because it did not have before it either her reasons for requesting the review or additional evidence that she sought to present. *See id.* at 7-9. However, the omission cannot be laid at the feet of the commissioner.

In a letter to the Appeals Council dated December 5, 2017, the plaintiff's attorney stated that he was appealing the ALJ's unfavorable October 2, 2017, a copy of which he enclosed, adding that "[a] written statement with new and missed evidence will follow in a separate mailing." Letter dated December 5, 2017, from Thaddeus V. Day, Esq., to Appeals Council, Plaintiff's Exh. 2 (ECF No. 11-2) to Statement of Errors.

The Appeals Council responded by letter dated January 5, 2018, stating that, although it deemed the plaintiff's request for review untimely, she had 60 days to provide a statement explaining why her appeal was timely and 30 days to submit additional information:

> **We Will Not Act For 30 Days**
>
> If you have more information, you must send it to us within 30 days of the date of this letter. We will not allow more time to send information except for very good reasons.
>
> . . .
>
> **What Happens Next**

> If we do not hear from you within 30 days, we will assume that you do not want to send us more information. We will then proceed with our action based on the record we have.

January 5, 2018, Letter at Page ID # 714. The plaintiff replied with a letter dated January 12, 2018, arguing that the request was indeed timely filed and explaining:

> My office was, and still is, working to gather additional information to bolster [the plaintiff's] claim. Despite working diligently to attain this information within the stated time period, it has been difficult to collect all the information necessary in the wake of [her] attempted suicide on November 16, 2017, for which she was hospitalized.

Letter dated January 12, 2018, from Thaddeus V. Day, Esq., to Appeals Council, Plaintiff's Exh. 4 (ECF No. 11-4) to Statement of Errors, at Page ID # 716. The plaintiff did not request that the 30-day limit be extended, *see id*. at Page ID ## 716-18, and ceased providing additional evidence to the Appeals Council upon receiving the notice that her appeal had been untimely filed, *see* Statement of Errors at 8. She notes that, despite repeated inquiries, she did not obtain a copy until January 14, 2019, of the June 25, 2018, Notice advising that her appeal of the untimeliness ruling had been successful, and the appeal was considered timely. *See id*.

Nonetheless, the Appeals Council had notified the plaintiff on January 5, 2018, that she had 30 days within which to submit additional evidence, barring "very good reasons" to extend that deadline. January 5, 2018, Letter at Page ID # 714. She neither submitted additional evidence within that time frame nor expressly sought an extension of that deadline.

In these circumstances, it was not reasonable for the plaintiff to wait for additional correspondence from the Appeals Council prior to submitting her additional evidence.

Remand, accordingly, is unwarranted on the basis of this point of error.

## B. Asserted Errors by ALJ

### 1. Step 2: Finding that Impairments Not Medically Determinable

The plaintiff contends that the medical record and/or her testimony at the administrative hearing support a finding that her impairments of the spine and hips, bipolar disorder, and PTSD were medically determinable. *See* Statement of Errors at 10-15, 17. I am unpersuaded.

The ALJ explained that the plaintiff's "[p]roposed impairments of the spine and hips" were

> not medically determinable, despite [her] statement at hearing that her lower back 'constantly' hurts and that her hips are 'uneven'. The objective record contains no findings by way of radiology or physical evaluation to confirm the [plaintiff] as subject to a chronic musculoskeletal abnormality of the spine or sacrum; nor is there any verification of [her] hearing statement that she has a 3-inch leg length discrepancy (Exhibits B1F, B3F, B4F, testimony).

Record at 55. The plaintiff protests that, in so finding, the ALJ ignored an August 20, 2016, report of Muhammed Khan, M.D., indicating that she had a diagnosis of myofascial pain, lumbosacral spondylitis, and sacroiliitis, which "appear[s] to be the medically determinable evidence [the ALJ] was seeking[.]" Statement of Errors at 12 (citing Exhibit B15F, spanning 70 pages).[3]

However, as the commissioner rejoins, *see* Opposition at 7-8, a diagnosis alone is insufficient to establish the existence of a medically determinable impairment if it is not supported "by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 416.921; *see also Bergeron v. Colvin*, C.A. No. 15-467M, 2016 WL 8673138, at *13 (D.R.I. Aug. 19, 2016) (concluding that "[t]he complete absence of any 'medically acceptable clinical and laboratory diagnostic techniques'" tainted the use of a medical diagnosis to find a medically determinable

---

[3] The plaintiff also argues that the ALJ "cites a paucity of medical records indicating that Plaintiff is subject to chronic musculoskeletal abnormality of the spine or sacrum or that she has a 3-inch leg discrepancy (Exhibits B1F, B3F, B4F, testimony)[.]" Statement of Errors at 10. Her citations to complete sets of medical records and to the entire transcript, without pinpoint citations, are of little help to the court.

impairment). The plaintiff's failure to point to any tests or clinical and laboratory diagnostic techniques used in identifying those diagnoses is fatal to her argument.

Turning to the plaintiff's alleged bipolar disorder, the ALJ explained that she did "not find bipolar disorder medically determinable" because, although the plaintiff was prescribed Lithium in the past, she "no longer takes the medication[,]" and "treating psychiatrist Joseph Scott, M.D. (Dr. Scott), . . . confirmed that the [plaintiff]'s reported mood swings and the like are not part of the criteria for bipolar." Record at 55. The plaintiff asserts that the ALJ's reliance on her cessation of medication for bipolar disorder is flawed, contending:

> The record reflects that Plaintiff's symptoms were still active even on Lithium. She was described by providers at York Psychiatric Services as suffering from "mood lability[,]" "irritability[,]" "agitation," "anxiety," "pressured speech," "fluctuating affect," and "fidgeting constantly" (Ex. B9F).

Statement of Errors at 17. However, the plaintiff fails to explain how these observations establish a medically determinable impairment of bipolar disorder, rendering her argument sufficiently cursory as to be waived. *See, e.g., United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (citations omitted); *Gagnon v. Colvin*, No. 1:15-cv-273-DBH, 2016 WL 403063, at *4 (D. Me. Jan. 13, 2016) (rec. dec., *aff'd* Feb. 2, 2016) ("the lack of any developed argument with respect to [expert's] opinion or opinions means that any claim to remand based on the [ALJ]'s treatment of [his] opinions must be deemed waived").

Finally, with respect to the plaintiff's alleged PTSD, the ALJ stated that "[p]sychiatric records also fail to confirm a diagnosis of post-traumatic stress disorder (PTSD)[.]" Record at 55. The plaintiff asserts that she "has been repeatedly diagnosed with PTSD, or PTSD needs to be

8

ruled out (B4F, B9F, B15F, et al, testimony)." Statement of Errors at 17. Again, the plaintiff provides no pinpoint citations to the more than 150 pages of medical records contained within those exhibits or to her hearing testimony. In any event, insofar as appears, no "medically acceptable clinical and laboratory diagnostic techniques[,]" 20 C.F.R. § 416.921, were used to support that diagnosis, and a notation that "PTSD needs to be ruled out" on its face calls into question even a diagnosis of PTSD, *see, e.g.*, *Black v. Berryhill*, No. 1:16-cv-00572-JAW, 2017 WL 4220116, at *5 (D. Me. Sept. 22, 2017) (rec. dec., *aff'd* Mar. 28, 2018) ("An entry ruling out a particular ailment or condition is *not* a diagnosis of that ailment or condition.") (citation and internal punctuation omitted) (emphasis in original).[4]

In any event, as the commissioner observes, *see* Opposition at 10, even if the ALJ did err, the plaintiff has not shown that any error is harmful. She identifies no limitations stemming from her purported impairments of the spine or hips, bipolar disorder, or PTSD beyond those already assessed by the ALJ. As this court has repeatedly stated, a Step 2 error "is uniformly considered harmless, and thus not to require remand, unless the plaintiff can demonstrate how the error would necessarily change the outcome of the plaintiff's claim." *Bolduc v. Astrue*, Civil No. 09-220-B-W, 2010 WL 276280, at *4 n.3 (D. Me. Jan. 19, 2010).

Remand, accordingly, is unwarranted on the basis of this point of error.

---

[4] The plaintiff also refers to "documentation from Provider Marcie Butkovic of Nasson Health Care which she intended to submit as part of her appeal [and which] confirms that [she] is under her care for PTSD[.]" Statement of Errors at 16-17. The plaintiff argues, "[a]lthough this letter was produced following the ALJ's Decision it remains a fact that Plaintiff was under the care of Marcie Butkovic NP-C for PTSD[.]" Statement of Errors at 17-18 n.2. The plaintiff, however, "has not shown 'good cause' for the late submission of the evidence at issue, particularly that evidence dated before the date of the [ALJ]'s decision[,]" *Oakes v. Colvin*, No. 1:15-cv-189-NT, 2015 WL 10436147, at *3 (D. Me. Dec. 28, 2015) (rec. dec., *aff'd* Mar. 8, 2016). Accordingly, I decline to consider this letter.

## 2. Step 2: Finding that CTS Nonsevere

The plaintiff next challenges the ALJ's determination that her CTS was nonsevere, which she argues contravened "the medical record indicating a finding that it is 'moderate to severe' (Ex. B12F)." Statement of Errors at 15. This is an apparent reference to an assessment made by Christopher Hughes, M.D., on July 21, 2016. *See* Record at 520.[5] However, as the ALJ found, *see id.* at 55, on August 23, 2016, the plaintiff underwent "successful CT release" surgery and, although she reported on September 7, 2016, that she had a "sharp pain and a cramping sensation in the palm[,]" *id.* at 521, she indicated on August 30, 2016, that "her pain [wa]s much improved" and "[h]er paresthesias [we]re improving[,]" *id.* at 524.

Because the plaintiff was diagnosed with CTS in June 2016 and received no further care after September 2016, her argument that her CTS "lasted longer than 12 months[,]" for which she provides no record citation, *see* Statement of Errors at 15, is unpersuasive. While the plaintiff asserts that her CTS "has failed to respond to orthotics" and "imposes correlative work-related limitations[,]" *id.* at 15, she neither provides record citations in support of those contentions nor elaborates on the work-related limitations her CTS imposes, thereby waiving the point. *See, e.g., Zannino*, 895 F.2d at 17; *Gagnon*, 2016 WL 403063, at *4.

## 3. Step 3: Finding that Listings 1.02A, 1.03 Not Met or Equaled

Next, the plaintiff contends that the ALJ erroneously found that she had failed to demonstrate an inability to ambulate effectively, as a result of which her foot impairment did not meet or medically equal Listings 1.02A or 1.03.[6] *See* Statement of Errors at 13-14; Record at 56.

---

[5] In this regard, again, the plaintiff's citation only to a complete set of medical records rather than providing a pinpoint citation is of little help to the court.

[6] The language contained in Listing 1.00B(2)(b), which is incorporated by reference in Listings 1.02 and 1.03, provides:

The plaintiff first cites her testimony at hearing that she cannot use stairs at a reasonable pace, often injures herself when attempting to use stairs, is not able to sustain a reasonable pace on rough or uneven surfaces, cannot effectively shop for herself or carry out routine ambulatory activities, and cannot move around her home without the use of an assistive ankle brace. *See* Statement of Errors at 14 (citing "testimony[,]" without any pinpoint citation). However, the plaintiff's testimony does not supply the "clinical evidence" the ALJ found lacking. In any event, the ALJ deemed the plaintiff's testimony, including that pertaining to her foot impairment, "not entirely consistent with the medical evidence and other evidence in the record[,]" Record at 58, and the plaintiff's separate challenge to that finding falls short for the reasons discussed below.

The plaintiff next asserts that "her longitudinal medical record reflects . . . that her disabling, congenital, musculoskeletal condition has not improved with time and has remained unresponsive to surgical and nonsurgical treatment (3F P.1)." Statement of Errors at 14. In support of that proposition, she cites only a note from Vincent Oliviero, M.D., dated March 5, 2015, *see id*. at 14-15; Record at 387-89. It can hardly be said that *one* medical record establishes a "longitudinal medical record" of a chronic ambulation problem. In any event, the ALJ reasonably found that nothing in the March 5, 2015, Oliviero note indicated that Dr. Oliviero "limited the [plaintiff] to 5 minutes standing or walking; an x-ray of the left foot showed fusion stable and

---

*To ambulate effectively*, individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail. The ability to walk independently about one's home without the use of assistive devices does not, in and of itself, constitute effective ambulation.

Listing 1.00B(2)(b).

consistent with the [plaintiff]'s surgical history, and Dr. Oliviero prescribed nothing stronger than an NSAID (Diclofenac) for tenderness in the mid-foot region." Record at 58; 387-89.

Remand, accordingly, is unwarranted on the basis of this point of error.

### 4. Step 3: Finding that Listing 12.04 not Met or Equaled

The plaintiff next contends that the ALJ erroneously found that her mental impairments did not meet or medically equal Listing 12.04 (depressive, bipolar, and related disorders). *See* Statement of Errors at 17-20; Record at 56-57. To meet that listing, a claimant's impairments must satisfy the criteria of Paragraph A and either Paragraph B or Paragraph C. *See* Listing 12.04. The plaintiff asserts that her impairments met the listing in both respects. *See* Statement of Errors at 17-20. I conclude that the ALJ supportably found otherwise.

First, even assuming *arguendo* that the plaintiff's impairments satisfied Paragraph A, the ALJ supportably found that they did not satisfy Paragraph B. The Paragraph B criteria, as revised effective January 17, 2017, delineate four domains of mental functioning: "[u]nderstand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." 20 C.F.R. § 416.920a(c)(3). To satisfy Paragraph B, a claimant must demonstrate either a marked limitation in two of those domains or an extreme limitation in one of them. *See* Listing 12.04B. The ALJ determined that the plaintiff had only mild limitations in the first and fourth domains and moderate limitations in the remaining two, citing examples of the plaintiff's activities of daily living in support of those conclusions. *See* Record at 56-57.

The plaintiff argues that "[h]er medical record indicates an extreme limitation in her ability to interact with others as well as an extreme limitation in her ability to adapt or manage herself." Statement of Errors at 18, *see also id*. (citing Exhibits B2F, B4F, and B8F). Yet, she never specifies any medical evidence in the record that would support, let alone require,

12

a conclusion that the Paragraph B criteria are met in her case. This is fatal to her request for remand on this basis. *See, e.g., Davis B. v. Berryhill*, No. 1:18-cv-00009-LEW, 2019 WL 495580, at *3 (D. Me. Feb. 8, 2019) (rec. dec., *aff'd* Mar. 19, 2019) (remand unwarranted when claimant failed to make *prima facie* case that his impairments satisfied criteria of listing).

The plaintiff also summarizes her testimony at hearing that she has no family support and is afraid to participate in local community events, meet new people, or interact with strangers due to her PTSD. *See* Statement of Errors at 19. However, she fails to adequately develop this point by providing citations to the hearing transcript, *see id.*, thereby waiving it, *see, e.g., Zannino*, 895 F.2d at 17; *Gagnon*, 2016 WL 403063, at *4.[7]

The plaintiff, finally, disputes the ALJ's finding that Ronald Butts was part of her small social circle, given that, as the ALJ found, he reported seeing the plaintiff only five to 10 times in the past two years. *See* Statement of Errors at 19. The ALJ rejected Mr. Butts's testimony with regard to "his subjective perception of the [plaintiff]'s past trauma, rather than upon her current level of functioning" *because* Mr. Butts "ha[d] not seen the [plaintiff] on a frequent basis for several years, only 5 to 10 times . . . in the past two years[.]" Record at 61. There is nothing contradictory about the ALJ's finding that Mr. Butts, who had chosen to testify on behalf of the plaintiff and occasionally took her to appointments, was part of her "small social circle." *Id*. at 56.

Remand, accordingly, is unwarranted on the basis of this point of error.

---

[7] In any event, the plaintiff's separate challenge to the ALJ's partial discounting of her subjective allegations falls short for the reasons discussed below.

### 5. Step 4: RFC Determination

The plaintiff, finally, challenges the ALJ's determination that she maintained the RFC to walk and/or stand for up to three hours in an eight-hour work day. *See* Statement of Errors at 9-11. In making that determination, the ALJ found, in relevant part:

> As to what the [plaintiff] stated as her worst impairment; the left lower extremity, . . . the clinical findings fail to substantiate a lower extremity impediment so severe as to prevent all work, or one that is not consistent with the parameters in the RFC.
>
> At hearing, for instance, the [plaintiff] alleged that all of the bones in her left foot are 'fused together'; that she experiences little functional use of the foot or toes because of a lack of flexion and severe arthritis; that her left leg is 3 inches shorter than the right and causes walking problems, and she has chronic hip, leg and foot pain as a result. *She also proposed that her former pediatric surgeon, Vincent Oliviero, M.D. (Dr. Oliviero) had restricted her to standing or walking for a maximum of 5 minutes. By contrast, the medical evidence does not corroborate this level of physical incapacity* (testimony).
>
> Instead, the record shows the [plaintiff]'s last office visit in March 2015 at Maine Orthopaedic Center with Dr. Oliviero, to whom [she] reported an acute incident of severe left foot pain 2 weeks prior that she said sent her to the emergency room (ER), although no record of the ER visit is in evidence. Moreover, there is nothing in Dr. Oliviero's office visit indicating the doctor limited the claimant to 5 minutes standing or walking; an x-ray of the left foot showed fusion stable and consistent with the claimant's surgical history, and *Dr. Oliviero prescribed nothing stronger than an NSAID (Diclofenac)* for tenderness in the mid-foot region (Exhibit B3F, March 5, 2015).

Record at 58 (emphasis added). The ALJ went on to detail the remaining longitudinal evidence of record spanning the period through the first half of 2017, finding "no persuasive evidence to counter the reasonable findings of State agency medical consultant Benjamin Weinberg, M.D.[,]" as a result of which she gave the Weinberg assessment "great weight." *Id*. at 58-60 (citation omitted).

The plaintiff takes issue with the ALJ's characterization of the Oliviero evidence. *See* Statement of Errors at 10-15. First, she contends that, in relying on the fact that "Dr. Oliviero

14

prescribed nothing stronger than an NSAID[,]" the ALJ failed to "acknowledge[e] that the provider pr[e]scribing medication . . . must operate within the constraints of her history of polysubstance abuse[.]" *Id*. at 10.[8] However, nothing in Dr. Oliviero's note indicates that he prescribed nothing stronger than an NSAID *because of* the plaintiff's polysubstance abuse disorder. *See* Record at 387-89. Moreover, in April 2015, just a few weeks after Dr. Oliviero prescribed the plaintiff NSAIDs, she was prescribed Oxycodone for pain in her hand, *see id*. at 409, and in May 2016 she was given Oxycodone and Flexeril for pain in her left foot, *see id*. at 510.

Second, the plaintiff takes issue with the ALJ's conclusion that "'[t]here is nothing in Dr. Oliviero's office visit indicating the doctor limited the claimant to 5 minutes standing or walking[.]'" Statement of Errors at 11 (quoting Record at 58). She observes that "[f]urther review of this same report reveals" that she "ha[d] undergone surgical and non-surgical intervention without success" and "'ha[d] difficulty walking distances [and could not] stand for any length of time.'" *Id*. (quoting Record at 387) (brackets added). Yet, as the ALJ found, this is not an opinion that the plaintiff was limited to only five minutes of standing or walking.[9]

In any event, as the commissioner notes, *see* Opposition at 18-19, the ALJ discussed the other longitudinal evidence that in her view undercut such a severe walking/standing limitation. She noted, for example, that (i) while the plaintiff visited the ER between March 2015 and May

---

[8] The ALJ did acknowledge that in two instances, one in 2015 and the other in 2016, Emergency Room ("ER") personnel declined to prescribe the plaintiff opiates due to her drug seeking behavior, instead providing her only NSAIDs in one instance and a muscle relaxer in the other. *See* Record at 59.

[9] The plaintiff further notes that following her receipt of the ALJ's unfavorable decision, she submitted additional evidence in the form of a March 26, 2014, letter from Dr. Oliviero supporting her position that she cannot do any form of work involving standing or walking. *See* Statement of Errors at 11. However, in *Mills v. Apfel,* 244 F.3d 1 (1st Cir. 2001), the First Circuit made clear that there are two circumstances in which remand based on submission of evidence subsequent to the issuance of an ALJ's decision is appropriate: (i) when that evidence is new and material *and* a claimant demonstrates good cause for its belated submission and (ii) when, regardless of whether there is such good cause, the Appeals Council has given an "egregiously mistaken ground" for its action in refusing review in the face of such late-tendered evidence. *Mills,* 244 F.3d at 5-6. The plaintiff makes no attempt to make either showing, *see* Statement of Errors at 11-12.

15

2016 "for various complaints, . . . only a few incidents related to the left foot[,]" (ii) when the plaintiff visited the ER in May 2016, she reported left foot pain after "a lot of walking[,]" (iii) in August 2016, Dr. Kahn, a pain specialist, gave her a cane after she requested one, and (iv) the plaintiff suffered a left ankle/foot sprain when she slipped and fell down the stairs in December 2016, but this was "not demonstrative of persistent foot dysfunction[,]" and "subsequent medical data fail[ed] to establish chronic ambulation problems due to this injury[.]" Record at 58-59 (citations and internal quotation marks omitted).

The plaintiff does not challenge the additional evidence on which the ALJ relied in discounting either her subjective allegations in general or those relating to her left foot impairment in particular. *See* Statement of Errors at 10-14. Accordingly, even if the ALJ had erred in characterizing Dr. Oliviero's May 2015 evidence, her recitation of other valid reasons for discounting the plaintiff's subjective allegations of foot/ankle dysfunction severe enough to prevent all work would render such error harmless. *See, e.g., Frustaglia v. Sec'y of Health & Human Servs.*, 829 F.2d 192, 195 (1st Cir. 1987) ("The credibility determination by the ALJ, who observed the claimant, evaluated his demeanor, and considered how that testimony fit in with the rest of the evidence, is entitled to deference, especially when supported by specific findings."); *Vito S. S., Jr. v. Saul*, No. 2:18-cv-00229-GZS, 2019 WL 2578077, at *2 (D. Me. June 24, 2019) (rec. dec., *aff'd* July 15, 2019) (although Social Security Ruling 16-3p eliminated the use of the term "credibility," *Frustaglia*'s deferential standard of review continues to apply); *Hadley v. Astrue*, No. 2:10-cv-51-GZS, 2010 WL 5638728, at *3 (D. Me. Dec. 30, 2010) (rec. dec., *aff'd* Jan. 24, 2011) (declining to disturb ALJ's partial discounting of claimant's subjective allegations when, even if claimant was correct in her assertion that two reasons for the finding were unsupported by the record, the ALJ supplied other well-supported reasons).

In sum, given that the "frequency or extent of treatment sought . . . [wa]s not comparable with the degree of the [plaintiff]'s . . . subjective complaints[,]" the ALJ was entitled to "find the alleged intensity and persistence of [her] symptoms . . . inconsistent with the overall evidence of record." Social Security Ruling 16-3 ("SSR 16-3"), reprinted in *West's Social Security Reporting Service* Rulings 1983-1991 (Supp. 2019), at 673. Remand, accordingly, is unwarranted on the basis of this point of error.[10]

## II. Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **AFFIRMED**.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days after being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 29th day of January, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

---

[10] At oral argument, the plaintiff's counsel contended for the first time that the ALJ failed to take into account the plaintiff's mental impairments in assessing her RFC, observing that the vocational expert ("VE") present at her hearing testified that there would be no work for a person who was off task 15 percent of a workday. *See* Record at 149. This point is waived both because it was raised for the first time at oral argument and because of its cursoriness. *See, e.g., Zannino*, 895 F.2d at 17; *Gagnon*, 2016 WL 403063, at *4; *Farrin v. Barnhart*, No. 05-144-P-H, 2006 WL 549376, at *5 (D. Me. Mar. 6, 2006) (rec. dec., *aff'd* Mar. 28, 2006) ("Counsel for the plaintiff in this case and the Social Security bar generally are hereby placed on notice that in the future, issues or claims not raised in the itemized statement of errors required by this court's Local Rule 16.3(a) will be considered waived and will not be addressed by this court." (footnote omitted)). In any event, as counsel for the commissioner rejoined, the ALJ not only assessed mental limitations as part of her RFC finding but also queried the VE about the impact on available jobs of the combined mental and physical limitations that she ultimately adopted. *Compare* Finding 4, Record at 57 *with id*. at 144-45.

17